## KUYPER & Co. *v.* UNITED STATES (No. 1281)[1]

ARTICLES CAST, PRESSED, ROLLED, AND HAMMERED.

These articles are for use as frames of automobiles. · Paragraph 121, tariff act of 1909, enumerates as dutiable thereunder articles which have been subjected to the more common processes in steel working, namely, hammering, rolling, or casting. Paragraph 131 provides for "pressed, sheared, or stamped shapes." The goods here are admittedly "pressed." Paragraph 131 applies.

United States Court of Customs Appeals, February 27, 1914.

APPEAL from Board of United States General Appraisers, Abstract 33645 (T. D. 33763).

[Affirmed.]

*Brown & Gerry* for appellants.

*William L. Wemple,* Assistant Attorney General (*Thomas J. Doherty,* assistant attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The Sauer Motor Co. caused to be imported at the port of New York 250 pieces of steel designed and constructed to be used as frames for automobiles. They were about 19 feet long, three-eighths of an inch thick, and of varying widths from 4 inches at the narrowest to 9 inches in the widest place. They are all larger in the middle than at the ends. A typical form is shown by a blue print in the record as consisting of steel of the above dimensions, which has been pressed into the imported shape from a bar of probably regular dimensions to one tapering in regular degrees at one end and having an indentation pressed into the other, such indentation being so great as to throw that portion of the bar out of line with the other parts. As imported the merchandise is so shaped and reinforced by the processes applied, principally that of pressing, as to form the exact shape required in ultimate use for the automobile frame. The

---

[1] Reported in T. D. 34253 (26 Treas. Dec., 418).

indentation made is pressed into the form so as to allow space for the swing of the rear axle. The process of construction is described by one of the importers' witnesses as follows:

Q. Just describe all the processes by which those were pressed and finished— those that you saw.—A. The ones that I saw, a steel billet is cast and taken to a furnace and heated and this in a hot condition is rolled until it is a little thicker than the required thickness and perfectly flat.

Q. And, of course, it has equal dimensions at one end as at the other and in the middle?—A. Yes.

Q. Then what?—A. Then it is pressed.

Q. Hot?—A. No; it is cooled again and pressed; afterwards reheated and pressed.

Q. Pressed while hot?—A. Yes; but it is not the same heat. It is taken through a hydraulic press and a die is made.

Q. And is that press which changes the dimension and destroys the form and gives it in the indentation as well as the taper ends?—A. Yes.

Q. After that, what is done?—A. Then it is allowed to cool and hammered to straighten it—take out the warpage from cooling.

Q. Anything else?—A. It is sheared off. From pressing there is always some scrap, you know, that hangs on to it; that is all taken off and cleaned off and length sheared.

The holes and rivets indicated by the record were added after importation. Synopsized, the processes applied are that the article is cast, rolled, pressed, and then hammered. The hammering was applied, as is stated by the witness, for the purpose of straightening out the warpage from cooling. Duty was assessed upon the merchandise by the collector at the port of New York under the provisions of paragraph 131 of the tariff act of 1909 and the relevant portion thereof as "pressed, sheared, or stamped shapes, not advanced in value or condition by any process or operation subsequent to the process of stamping." The importers, who are the appellants, make claim that the merchandise is properly dutiable under paragraph 121 of said act as "structural shapes of iron or steel, not assembled, or manufactured, or advanced beyond hammering, rolling, or casting." The two paragraphs in full read as follows:

121. Beams, girders, joists, angles, channels, car-truck channels, T T columns and posts or parts or sections of columns and posts, deck and bulb beams, and building forms, together with all other structural shapes of iron or steel, not assembled, or manufactured, or advanced beyond hammering, rolling, or casting, valued at nine-tenths of one cent per pound or less, three-tenths of one cent per pound; valued above nine-tenths of one cent per pound, four-tenths of one cent per pound.

131. Steel ingots, cogged ingots, blooms, and slabs, by whatever process made; die blocks or blanks; billets and bars and tapered or beveled bars; mill shafting; pressed, sheared, or stamped shapes, not advanced in value or condition by any process or operation subsequent to the process of stamping; hammer molds or swaged steel; gun-barrel molds not in bars; alloys used as substitutes for steel in the manufacture of tools; all descriptions and shapes of dry sand, loam, or iron-molded steel castings; sheets and plates and steel not specially provided for in this section, all of the above valued at three-fourths of one cent per pound or less, seven-fortieths of one cent per pound; valued above three-fourths of one cent and not above one and three-tenths cents per pound, three-tenths of one cent per pound; valued above one and three-tenths cents and not above one and eight-tenths cents per pound, five-tenths of one

. cent per pound; valued above one and eight-tenths cents and not above two and two-tenths cents per pound, six-tenths of one cent per pound; valued above two and two-tenths cents and not above three cents per pound, eight-tenths of one cent per pound; valued above three cents per pound and not above four cents per pound, one and one-tenth cents per pound; valued above four cents and not above seven cents per pound, one and two-tenths cents per pound; valued above seven cents and not above ten. cents per pound, one and nine-tenths cents per pound; valued above ten cents and not above thirteen cents per pound, two and three-tenths cents per pound; valued above thirteen cents and not above sixteen cents per pound, two and seven-tenths cents per pound; valued above sixteen cents and not above twenty-four cents per pound, four and six-tenths cents per pound; valued above twenty-four cents and not above thirty-two cents per pound, six cents per pound; valued above thirty-two cents and not above forty cents per pound, seven cents per pound; valued above forty cents per pound, twenty per centum ad valorem.

It will be observed from the schedule of rates applied in the respective paragraphs that paragraph 121 was intended to cover a class of merchandise of a cruder form and ordinarily advanced to a less degree of manufactured completeness than paragraph 131. Thus there are but two grades of rates in paragraph 121, the highest of which is made to apply to merchandise valued above nine-tenths of 1 cent per pound, levying a duty of four-tenths of 1 cent per pound; whereas the schedule of rates in paragraph 131 extends in numerous specific provisions from a class of articles valued at three-fourths of 1 cent per pound, upon which is levied a duty of seven-fortieths of 1 cent per pound, to a class of articles valued above 40 cents per pound, upon which is levied a duty of 20 per cent ad valorem.

This importation consists of a grade of steel devoted to a purpose which common knowledge indicates must be of great strength, and as imported was, save for the boring of the holes for the rivets and the riveting, in a completed shape ready for final use. The record discloses that this shape is advanced by a pressing process which is done by expensive machinery, expressly prepared for that purpose, owned by the said importing firm and operated abroad at the place of the manufacture of the imported articles. It is operated by hydraulic pressure and is manifestly of great strength and power, the application of which to the imported article gives it its shape, identifies its future use, and, in fact, constructs the steel into articles suitable for no other use out of a material which, before the application of these processes, undoubtedly could have been applied to many uses.

Paragraph 121 enumerates as dutiable thereunder articles which have been subjected to the more common steel processes of hammering, rolling, or casting. Paragraph 131 alone provides for "pressed, sheared, or stamped shapes." This merchandise is admittedly a pressed shape.

We are therefore of the opinion that it is more specifically provided for in paragraph 131, which conclusion is reinforced by every intendment supported by the context of the applicable provisions of the law.

*Affirmed.*